## HEISSENBUTTEL v. MAYOR, ETC., OF NEW YORK.

*(District Court, S. D. New York.    April 7, 1887.)*

1. WHARF AND WHARFINGER—CONCEALED DANGERS—WARNING.
   Owners of wharves and slips knowing them to be dangerous for public use are bound to close them, or to give and maintain some conspicuous notice warning the public of the danger. This applies equally to a new landing built to replace an old one, until the new landing is fit for use.

2. SAME—CASE STATED—UNEQUAL BOTTOM—IMPLIED OPENING TO THE PUBLIC USE.
   The defendant built a new landing, 25 feet shorter than the old one, at the foot of One Hundred and Sixth street, Harlem river. The old bottom of the landing was safe. The new dock, when completely finished, was unfit for use because the dredging of the bottom along-side was incomplete. The libelant, knowing of the repairs, and that the work on the dock itself was done, but having no knowledge or notice of any imperfection about the bottom along-side, sent a cargo of coal to the dock seven days after the completion of the pier itself. In taking the ground, the boat was broken in two through the unequal dredging of the bottom. There was no inclosure of the pier after its completion, and no notice or warning that it was not ready for use. *Held,* that the circumstances constituted an implied invitation to the public to use the wharf, in the absence of any notice or caution to the contrary; that the respondent was bound to keep it closed or to give conspicuous notice warning the public away, and was liable for the damage for not doing so.

In Admiralty.

On the fifth of July, 1883, the libelant's boat, with a cargo of 268 tons of coal, was taken from Port Johnston to the landing in the Harlem river at the foot of One Hundred and Sixth street, where she was moored. Not long after, in the rise and fall of the tides, she was broken in the middle, through the inequality of the bottom along-side the landing, in consequence of its having been dug out immediately in front of the landing some four or five feet deeper than immediately above or below, so as to render it unfit, for the time being, for the accommodation of vessels. This suit is to recover the damages.

The landing was an old one, to which the public had been accustomed to resort. It was formed by a short pier projecting into the river, and was owned by the corporation, for the use of which it collected wharfage. The old pier having become dilapidated it was torn down, and a new one had just been built. To accord with the newly-adopted exterior line of the Harlem river, it was not built so far into the stream as the former dock, by about 25 feet. The new dock itself was built by contract; it was finished on the twenty-ninth of June, about seven days preceding the accident. The bottom in front of the old pier was even and safe. For the purpose of making the new pier 25 feet shorter, the city had dredged the space towards the shore occupied by the old dock, but at the time of the accident had not yet extended the dredging, as it designed to do, and as it afterwards did, both above and below the line of the pier, so as to make it fit for vessels to land there. No notice warning persons from the dock was at any time posted upon the premises. The respondent contended that it was not liable; because, though the pier itself was finished, the dredging was not completed, and because the new dock had not been

opened to the public, or vessels invited there, and that the libelant's boat came in her own wrong, and at her own risk.

*E. Henry Lacombe*, for respondents.

*Hyland & Zabriskie*, for libelant.

BROWN, J. There is no dispute in regard to the general rule that the proprietors of wharves and slips are responsible for damages caused to vessels coming to them in the usual course of business, when the damage arises from defects of which the owners have notice or are chargeable with knowledge. When a wharf or slip becomes dangerous, the law imposes upon owners the duty of giving reasonable notice and warning of the danger, in order that the public, accustomed to resort to them, may not be entrapped and injured. There is no difference, in principle, between repairs upon highways and upon wharves and slips in this respect, or in the duty of reasonable caution to the public. Shear. & R. Neg. §§ 498, 585. This obligation, and the practice, to give warning in some conspicuous way of any obstruction in highways that are in course of repair, are well recognized. The evidence shows a practice somewhat similar in regard to wharves and slips, although it was claimed that the practice of inclosing the pier itself is rather for the convenience of the workmen. But the occasional use of a conspicuous notice to warn persons from dangerous piers or docks is a matter of common knowledge, and there can be no doubt that the want of any such notice or caution, where wharves or slips are dangerous, is legal negligence in the proprietor or lessee, as the case may be.

Upon the completion of the new pier in this case, it was apparently ready for the public use. There was no notice or caution of any kind posted upon the premises warning persons away, nor any person present to give such warning. The appearance of the dock in a finished condition, and in its former place, so far as the public could judge, was by implication an invitation to the public to make use of it, in the absence of any caution to the contrary. It was a virtual opening of the dock for the public use. It is impracticable that vessels navigating rivers should first send ashore to make inquiries whether they can land at a dock apparently perfect and ready for use; nor, so far as appears, is there ordinarily any other mode of opening a dock to the public than by putting it in apparent complete readiness for use, with no notice to the contrary.

Doubtless the city had a discretion as regards the time when it would complete the dredging, so as to make the landing fit for use; but this discretion did not release it from its obligation not to mislead the public in the mean time by apparently offering the dock for use as a landing without notice of its concealed dangerous character. In the leading case of *Gibbs* v. *Trustees of Liverpool Docks*, 6 Hurl. & N. 164, (in the exchequer chamber,) COLERIDGE, J., says: "But at all events we think that if they [the defendants] had a discretion, under the circumstances, to let the danger continue, they ought, as soon as they knew of it, to have closed the dock to the public." Judgment was given on that ground,

and the decision was affirmed in the house of lords. L. R. 1 H. L. 93. If it is a duty to close a dock, it is equally a duty to keep it closed, or to warn the public from concealed dangers.

The obligation to give notice to the public of any. changed character or condition that renders such places dangerous has been frequently recognized, and seems to me to be justly applicable here. In the case of *Ireland* v. *Oswego, etc., Co.*, 13 N. Y. 526, JOHNSON, J., says, referring to a corporation making repairs to a road, that " it has no right to place and continue dangerous obstructions in parts of the highway where persons of ordinary prudence do or will be likely to travel, without some guard or notice to warn them of their danger." Page 534. DENIO, C. J., uses similar language. *Railroad Co.* v. *Hanning*, 15 Wall. 649, 655, 660; *Carleton* v. *Franconia*, 99 Mass. 216; Shear. & R. Neg. § 366.

The evidence does not show any such knowledge on the libelant's part as should preclude his recovery. He knew, indeed, that the old dock had been torn down, and a new one put in its place. He was there after the dock itself was finished, and before the cargo of coal was sent; and, as he testifies, supposed that all the work was done, and that the dock was ready for the accommodation of vessels. There was nothing to lead him to any contrary supposition, or to suggest further inquiry. Frank, the consignee, who ordered the cargo there, supposed the work was done; and there is no proof that would charge either with any knowledge that the bottom along-side the landing was unsafe, that the previous dredging was only partial, or that the city intended to dredge more.

The case seems to me to turn wholly upon the duty of the corporation to give notice, where the obstructions or unsafe character of the landing are concealed, and are evidently liable to mislead others. The two parties do not stand upon the same footing. The one has knowledge of the danger; the other has not. To hold that persons who venture to use a new dock apparently finished in place of an old one to which they had long been accustomed to resort, must first make inquiries, at some place several miles distant, which the public generally are ignorant of, and could not ascertain without considerable difficulty, would, as it seems to me, be a very unreasonable requirement. The posting of a conspicuous notice on the premises is, on the other hand, so simple and reasonable a provision for the protection of the public, and so strictly according to the analogies of other similar cases, that I cannot hesitate to hold it obligatory.

For these reasons I must allow a decree for the libelant, with costs, with a reference to compute the damages.