WILLIAM WHITMAN & CO. v. NAMQUIT WORSTED CO.

(District Court, D. Rhode Island. July 29, 1913.)

No. 2,966.

1. PRINCIPAL AND AGENT (§ 23*)—SELLING AGENTS—EVIDENCE OF AGENCY—CONTRACT OF SALE—BREACH—ACTION BY AGENT—PROFITS RECOVERABLE.

Where, in an action for breach of a contract for the sale of yarns, defendant wrote plaintiffs that they might make sample lots of 250 pounds out of a specified grade, and an invoice referred to plaintiffs as "selling agents for Arlington Mills," and the terms recited were "60 days f. o. b. Lawrence," where the Arlington Mills were situated, there being also evidence that plaintiffs were commission merchants, and were the selling agents of the entire product of the Arlington Mills, it sufficiently appeared that defendant knew it was dealing with plaintiffs as manufacturers' agents, authorized by the mills to sell its product in advance on its behalf, so as to entitle plaintiffs to recover, as damages for breach of contract, the loss of profits to the mills.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

2. PRINCIPAL AND AGENT (§ 103*)—SELLING AGENT—CONTRACT OF SALE—BREACH—ACTION BY AGENT.

A manufacturer's selling agent, with authority to sell the product of the manufacturer's mill, had authority to make contracts of sale which would

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be binding on the manufacturer, for breach of which either the manufacturer or the agent might recover full damages.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278-293, 353-359, 367; Dec. Dig. § 103.*]

3. SALES (§ 374*)—ACTION FOR BREACH OF CONTRACT—TIME TO SUE.

Where a contract for the sale of yarns provided for deliveries during October, November, and December, 1909, at specified prices, and, though the seller was willing to extend the time, there was no offer of extension definitely accepted by the buyer, nor any definite request for an extension made by the buyer, and no waiver of the seller's right to performance, and the buyer failed to receive deliveries during October, November, and December, 1909, its breach of contract was complete December 31st of that year.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1091; Dec. Dig. § 37.4.*]

4. SALES (§ 1*)—CONTRACT—DEFINITENESS.

Where a contract for the sale of yarn specified 50,000 pounds of 3-grade white worsted, on the basis of 2/32 on Dresser Spools, 97¢, and 1/24 on Bobbins, 89¢, the contract was not rendered uncertain by reason of the fact that the buyer was entitled to make variations within such general description and to give specifications for spinning the yarn, which it failed to do.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1, 3–5; Dec. Dig. § 1.*]

5. SALES (§ 153*)—CONTRACT—MANUFACTURED MATERIAL—TENDER.

Where a contract for the sale of yarn to be manufactured specified certain basic prices, the buyer being expected to give specifications for spinning, it having failed to do so, the seller was excused from tendering the yarn, provided it was always ready and willing to perform.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 358–366; Dec. Dig. § 153.*]

6. SALES (§ 384*)—MATERIAL TO BE MANUFACTURED—CONTRACT—BREACH—PROFITS.

Where a contract for the sale of yarns to be manufactured specified 50,000 pounds 3-grade worsted, with basic prices, from which the buyer was entitled to specify various grades and quantities, but refused to give specifications or to take the yarn, the seller was entitled to recover an amount equal to the profit which would have been made on the yarn, had the buyer selected the quality calling for the lowest price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

7. FRAUDS, STATUTE OF (§ 106*)—CONTRACT OF SALE—MEMORANDUM.

A commission merchant's memorandum of a contract for the sale of yarn, directed to the buyer and reciting entry of buyer's order for 50,000 pounds 3-grade white worsted yarn for delivery during October, November, and December, 1909, on specified basic prices, from Arlington Mills, terms 60 days f. o. b. Lawrence, discount 6 per cent. per annum, signed by a representative of the commission merchants, and indorsed, "This is in accordance with our understanding," by an agent of the buyer, was sufficient to satisfy the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 193, 210, 211; Dec. Dig. § 106.*]

At Law. Action by William Whitman & Co. against the Namquit Worsted Company. Judgment for complainants.

Edwards & Angell, of Providence, R. I., for complainants.

Gardner, Pirce & Thornley, of Providence, R. I., for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BROWN, District Judge.   This is an action for breach of contract, brought by William Whitman, and others, citizens and residents of New York and of Massachusetts, copartners under the firm name of William Whitman & Co., against the Namquit Worsted Company, a corporation of Rhode Island.

The case is not free from difficulties.   The defendant insists upon the application of the statute of frauds.   I am of the opinion that this is not applicable, for the reason that there is no indefiniteness or uncertainty in the contract, and that evidence as to the former course of dealing between the parties, and of a right to make variations in prices and spins of yarns, does not render the contract uncertain.   Considered generically, the contract is definite and certain, and comprehends in general terms all that is claimed by the plaintiffs.   Evidence that specific variations were permissible, and that there might be a great variety in the counts or spins of yarn, is not inconsistent with the contract, nor does it show that any essential element was omitted in the memorandum.

[1]   The principal difficulty is as to the right of William Whitman & Co. to recover as damages the loss of profit to the Arlington Mills. The declaration does not disclose the Arlington Mills as a principal, and it must be conceded that the evidence as to the exact relation between William Whitman & Co. and the Arlington Mills is most meager in character.   It consists of the following testimony:

"Q. What is the business of William Whitman & Co.?
"A. It is commission merchants.
"Q. What is their relation with the Arlington Mills?
"A. They are selling agents of all their product."

It must be confessed that there is uncertainty in this testimony. There is, however, evidence in the correspondence tending to show that the defendant understood that it was dealing with a manufacturer's selling agent.   Thus, in Exhibit 9, defendant writes plaintiffs:

"You may make our sample lots of 250 pounds out of the B D grade."

Invoice of September 15, 1909, is headed: "Selling Agents for Arlington Mills."   Terms are 60 days f. o. b. Lawrence, where the Arlington Mills are situated.

While it is possible that selling agents may be selling on their own account, under an arrangement such as is indicated in Willcox & Gibbs Company v. Ewing, 141 U. S. 627, 12 Sup. Ct. 94, 35 L. Ed. 882, in which case they would not be entitled to recover the manufacturer's profit, yet, as the plaintiffs rested their case with general proof that plaintiffs were selling agents, and the defendant made no cross-examination, I think I must find that William Whitman & Co. had authority to sell in advance the product of the Arlington Mills on behalf of the Arlington Mills, and to recover upon a breach of contract of sale according to the rule of damages laid down in River Spinning Company v. Atlantic Mills (C. C.) 155 Fed. 466.

The evidence is insufficient to authorize an inference that William Whitman & Co. were selling agents merely in the special sense in which that term is sometimes used, as including agents who are given an ex-

clusive right to buy goods within a restricted territory at a fixed discount and to dispose of them on their own account, without being accountable to the principal, except for the price at which goods are sold by the principal to the agent.

The plaintiffs called as a witness William D. Hartshorn, the agent of the Arlington Mills, who testified as to the ability of the mill to produce and deliver the yarn. He also testified at length as to the cost of production at the mills. From this I think can be drawn a permissible inference that the present suit is not brought without the knowledge and acquiescence of the Arlington Mills.

[2] Authority to sell the product of the mill in the manner shown in this and previous transactions would naturally include authority to make contracts for sale which would be binding on the true principal, and for which the true principal might, in its own name, recover damages if it chose, but for which the agent may sue and recover all damages which his principal might have recovered.

I am of the opinion that upon the evidence in the case the defendant understood that it was dealing with a manufacturer's agent for sale, and that there is no injustice in charging it with damages according to the rule laid down in River Spinning Company v. Atlantic Mills (C. C.) 155 Fed. 466.

### Findings of Fact.

On or about July 14, 1909, the parties entered into the following contract in writing:

William Whitman & Co.,

Dry Goods Commission Merchants,

Worsted Yarn and Tops Department,

78 Chauncy St.

No. 2760—Corrected.				Boston, Mass., July 14, 1909.
Namquit Worsted Co., Bristol, R. I.

Dear Sir: We have entered your order of July 12 as our No. 2297 as given our Mr. Bankart for 50,000 lbs. 3-grade white worsted yarn for delivery during Oct. Nov. & Dec. '09 on following basis of prices:

2/32 on Dresser Spools		97¢
1/24 on Bobbins			89¢

From Arlington Mills
How put up, as above						Price, as above.
Terms, 60 days f. o. b. Lawrence.		Discount at rate 6% per annum.
Delivery, during October, November & December, 1909.
	Yours very truly,				William Whitman & Co.,
								By W. C. Ballard.

This is in accordance with our understanding.
						[Signed]		J. H. Merrill.

I find that J. H. Merrill was duly authorized to sign, and did sign, on behalf of the Namquit Worsted Company.

That the parties had previously executed similar papers and had had previous dealings of a similar character.

That the former course of business upon similar contracts was for the defendant to give to the plaintiffs specifications of the particular species of yarn of the general description contained in the contract,

and for the plaintiffs to have the yarn spun at the Arlington Mills according to these specifications.

While there is no evidence of an express agreement on the part of the buyer to specify the sizes and styles of spinnings for yarns deliverable under the contract in suit, it was fully understood between the parties that this should be done, and that the yarn should not be spun until after the receipt of specifications by the plaintiffs from the defendant.

That two species of 3-grade white worsted yarn are described in the contract, with the prices therefor as follows:

                2/32 on Dresser Spools   97¢.
                1/24 on Bobbins          89¢.

That according to the former course of business between the parties, with prices so given for particular species of the general description of yarn, the price for any other particular species of 3-grade white worsted yarn could be determined according to a scale of variation in price for different spins of yarn of the general description.

That the expression "following basis of prices" was an expression formerly used by both parties to signify that in computing prices for various spins of yarn the prices specifically named in the contract should be a sufficient basis for determining prices on other yarns, according to a system of variations understood by both parties, and was in the present contract so used.

That according to the former course of business, and to the present understanding of the parties based thereon, the defendant might at its option have specified about 48 species of 3-grade white worsted yarn, but that the contract itself gave prices from which the prices of these various species could be determined.

That each of the 48 styles and sizes that might be delivered under the contract in suit was at a price per pound differing from that of any of the other styles and sizes.

That the profit upon the execution of the contract in suit would have been a different amount for each of the different sizes and spinnings.

There is testimony from a witness for the plaintiffs that according to a custom of the trade between these parties the specifications of the Namquit Worsted Company had been subject to the approval of William Whitman & Co. I find this testimony insufficient to show that William Whitman & Co. had a right to withhold their approval of specifications sent for yarns.

Both buyer and seller were bound to the performance of the agreement above set forth, and such was the understanding of the parties.

That in accordance with the understanding of the parties specifications should have been given approximately two months before the time of delivery.

That there was no express agreement between the parties to extend the time for the performance of the contract, or to vary the terms thereof as to delivery.

That the plaintiffs were willing to extend the time, but that no offer of extension was definitely accepted by the defendant, nor was any definite request for an extension of time made by the defendant.

[3] That the plaintiffs did not waive their right to performance according to the terms of the contract, and were not precluded, either by agreement or by conduct, from claiming a breach of contract by reason of defendant's failure to receive deliveries during October, November, and December, 1909. The defendant's breach of contract was complete on December 31, 1909.

[4] That the defendant agreed to purchase 50,000 pounds of 3-grade white worsted yarn, and that this was a certain and definite agreement, which was not made indefinite and uncertain merely by reason of the fact that the defendant had the right to make variations within this general description.

[5] The defendant failed, though requested, to give specifications for the spinning of yarn, and I find that by reason of such failure the plaintiffs were excused from tendering the yarn to the defendant, and that the plaintiffs have on their part been always ready and willing to perform the contract.

That the plaintiffs were dry goods commission merchants and were selling agents of the Arlington Mills.

On September 13, 1909, the paper marked "Plaintiffs' Exhibit 2" passed between the parties, and the yarn called for therein was manufactured and delivered from the Arlington Mills, and was accepted and paid for by the defendant.

At various times between November 2, 1909, and the latter part of May, 1910, the plaintiffs requested the defendant to specify yarns described in the paper marked "Plaintiffs' Exhibit 1." In response to requests of the plaintiffs, the defendant promised in general terms to give specifications, but did not promise specifically to give specifications upon the present contract. As other contracts were outstanding upon which specifications were due, I am unable to say that the general promise to give specifications amounts to a specific promise to give specifications upon this particular contract.

No specifications, other than Plaintiffs' Exhibit 2, were made by the defendant, and there still remains undelivered 49,000 pounds of the yarn described in the paper marked "Plaintiffs' Exhibit 1."

The defendant did not definitely refuse to specify the balance of the yarns described in Plaintiffs' Exhibit 1 until the latter part of May, 1910.

[6] The Arlington Mills did not at any time manufacture any of the yarns mentioned in Plaintiffs' Exhibit 1, except an amount less than 1,000 pounds.

Taking December 31, 1910, as the date of the final breach of contract, the smallest profit to the Arlington Mills on any of the yarn which the defendant might specify under the paper marked Plaintiffs' Exhibit 1 is $6,404.30.

The prices for each of the various counts or spins of yarn, calculated upon the basis of the figures named in the contract, according to the course of business and understanding of the parties, are as contained in Defendant's Exhibit F.

That under the contract the defendant was entitled to order yarn of the smallest price, and that upon its breach of contract it became lia-

ble to the plaintiffs in an amount equal to the profit which the plaintiffs would have made on yarn of the smallest price.

The contract in writing was definite as to quantity and grade and as to price for two specific varieties, and although the defendant, according to the unwritten understanding of the parties, might have specified yarns at a lesser price upon the basis of the figures set forth in the contract, the defendant did not specify yarns at any price, and therefore did not exercise its rights according to the understanding and according to the former course of dealing.

## Findings of Law.

The paper marked "Plaintiffs' Exhibit 1" constituted a valid and binding contract between the parties.

Said contract is not invalid for indefiniteness or uncertainty.

The facts shown in evidence as to the former dealings of the parties and as to the rights of the defendant to specify many different varieties of yarn do not make indefinite or uncertain the terms of Exhibit 1, or show that this was an incomplete memorandum of agreement.

The defendant could not, by failure to specify, escape the performance of the terms of the agreement specifically set forth in Exhibit 1.

The plaintiffs are entitled to hold the defendant to the terms of Exhibit 1, for the reason that the evidence as to specifying and as to varying prices is not inconsistent with the terms of Exhibit 1, and amounts merely to evidence that the defendant, had it chosen to exercise the right, might have made particular variations, but all within the scope of the general agreement of Exhibit 1.

[7] The contract is not insufficient nor unenforceable by reason of the statute of frauds.

The measure of damages is the least profit which the plaintiffs would have made on any of the yarns which the defendant was entitled to specify under the contract.

Judgment will be entered for the plaintiffs in the sum of $6,404.30, with interest thereon from December 31, 1909, to February 16, 1911, at 6 per cent.