TOXAWAY TANNING CO. v. SULZBERGER & SONS CO. et al. HANS REES' SONS v. SAME. J. H. LADEW CO. v. SAME.

(Circuit Court of Appeals, Second Circuit. June 6, 1917.)

Nos. 249–251.

1. SHIPPING ☞143—INJURY TO GOODS—PARTIES LIABLE.

Where the charterer of a steamship, not needing the whole of the space, arranged with a steamship line to operate the steamer as one of its own line and get freight for the open spaces, the steamship line was the charterer's general agent, and its negligence in unloading green salted

hides on a pier on which dry aniline powder had been spilled was imputable to the charterer, and made the charterer liable to the shippers for the resulting damage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 489.]

2. INDEMNITY ⚫=13(1)—LIABILITY OF ONE PRIMARILY LIABLE.
The steamship line was liable to indemnify the charterer.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29, 30, 33, 34.]

3. SHIPPING ⚫=126—INJURY TO GOODS—UNLOADING ON PIER.
Where a steamship line ought to have appreciated the danger of unloading green salted hides on a pier on which dry aniline powder had been spilled, and a proper and liberal use of dunnage would have prevented or greatly reduced the damage, they were at fault for not taking these precautions.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 461–464.]

4. WHARVES ⚫=20(1)—INJURIES TO GOODS—DUTIES OF WHARFINGER.
A wharfinger, which, in addition to payment by the day for the time vessels were at its pier and until the cargo was removed, was paid $25 for cleaning up the pier and removing the sweepings, was not required to resurface its pier with asphalt, in order to make the surface perfectly free of aniline powder, which had been spilled thereon, and which could not otherwise be entirely removed.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. § 35.]

5. WHARVES ⚫=20(1)—INJURIES TO GOODS—DUTIES OF WHARFINGER.
Where the wharfinger's representatives had nothing to do with the unloading of green salted hides on such pier, did not know that there were any such hides on board the steamer from which they were unloaded, and were not present, it was not lacking in ordinary care and diligence, and was not liable for damages to the hides from such aniline powder, as it could have done nothing more than to suggest the use of dunnage.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. § 35.]

Appeals from the District Court of the United States for the Southern District of New York.

Three libels, by the Toxaway Tanning Company, Hans Rees' Sons, and the J. H. Ladew Company against Sulzberger & Sons Company and others. From decrees for libelants, defendants Barber & Co., Incorporated, and another appeal. Modified and affirmed.

Kirlin, Woolsey & Hickox, of New York City (John M. Woolsey, of New York City, of counsel), for appellant Barber & Co., Inc.

Haight, Sandford & Smith, of New York City (Edward Sanford and John W. Griffin, both of New York City, of counsel), for appellant Hamburg-American Line.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Chauncey I. Clark, both of New York City, of counsel), for appellees Toxaway Tanning Co. and J. H. Ladew Co.

Cravath & Henderson, of New York City (Hoyt A. Moore and Stuart McNamara, both of New York City, of counsel), for appellee Sulzberger & Sons Co.

L. H. Porter, of New York City, for appellee Hans Rees' Sons.

Before COXE, WARD, and ROGERS, Circuit Judges.

⚫=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge.  Sulzberger & Sons Company, a corporation of the state of New York, exclusively engaged in the packing business, found itself in need of refrigerating space on a steamer to bring a large quantity of fresh beef from Buenos Aires to New York.  To accomplish this it took a refrigerating steamer named the Suriname on time charter for a period of 60 days.  As the company needed only the refrigerating space northbound, and had no cargo southbound and knew nothing about the shipping business, it arranged with Barber & Co. to get freight both ways for the open spaces and to operate the steamer as if it were one of their own line.  This Barber & Co. did, Sulzberger & Sons Company taking absolutely no part in the transaction.

Barber & Co. had a standing arrangement with the Hamburg-American Line for berths for its steamers on the south side of that company's pier at the foot of Thirty-Third street, Brooklyn.  The charge was $75 a day while the vessel was at the pier, $60 a day from the time she left until the cargo was removed, and $25 for cleaning up the pier and removing the sweepings before discharge began.

There are four berths on the south side of the pier, numbered 1 to 4, beginning at the river end.  Between March 24 and 27, 1915, the steamer George E. Warren, also operated by Barber & Co., discharged a quantity of aniline dye stuffs in kegs, much of which, in the form of a powder, got scattered over the pier, owing to the insufficiency of the kegs.  The Suriname arrived April 1st at 6:30 p. m. and left April 5th at 8:45 a. m., occupying berth No. 3, just west of the berth at which the Warren had laid.

The Hamburg-American Line flushed the surface of the pier at these berths with hose and swept it with brooms before the Suriname began to discharge, which both the Hamburg-American Line and Barber & Co. thought a sufficient washing down to clean the pier.  The steamer laid bow in to the eastward, and three large consignments of green salted hides, which are more or less wet, were discharged from hold No. 2, beginning the night of April 2d, which was Good Friday, and ending at 7 a. m. Saturday, April 3d.  The representatives of the Hamburg-American Line were not at the pier on Friday,. and did not return until after the hides had been landed.  They were laid in piles four feet high, flesh side down, on the asphalt surface of the pier, without any dunnage whatever.  It was afterwards discovered that many of them were badly damaged by coming in contact with the dry aniline powder.  The three shippers filed libels to recover for this damage, the respondents being Sulzberger & Sons Company, the Hamburg-American Line, and Barber & Co.

The District Judge found that Sulzberger & Sons Company was a common carrier, and liable at least as warehousemen to the shippers for the damage in question; that the Hamburg-American Line was liable as wharfinger for lack of ordinary care in not cleaning away all the aniline powder and that Barber & Co. were liable to Sulzberger & Company for lack of ordinary care in discharging the hides on the pier before all the aniline powder had been removed.  He found that, although the Hamburg-American Line and Barber & Co. believed that the pier was entirely clean, they ought by the exercise of due diligence

to have known that the cleaning given was insufficient to remove all the aniline powder and that wet goods like the green salted hides coming in contact with it would be damaged. Accordingly he entered decrees in favor of the libelants, one half to be paid in the first instance by the Hamburg-American Line and Barber & Co. respectively, any deficiency to be paid by Sulzberger & Sons Company.

[1-3] We agree with him that both the Hamburg-American Line and Barber & Co. ought to have appreciated the danger to which the hides were exposed, and also that the negligence of Barber & Co., the general agents of Sulzberger & Sons Company, is imputable to the latter. Accordingly the Sulzberger & Sons Company was rightly held liable to the shippers, and Barber & Co. liable to indemnify the company. He was furthermore of opinion that the question of dunnage was immaterial, but we think that a proper and liberal use of dunnage by Barber & Co. would have prevented or greatly reduced the damage. They were at fault for not taking this precaution.

[4, 5] So far as the Hamburg-American Line is concerned, the evidence is that the only way it could have made the surface perfectly free of the aniline powder would have been by resurfacing it with asphalt. We think such a service could not have been intended to be covered by a payment of $25 for cleaning the pier and removing the sweepings, and that the Hamburg-American Line performed its contract by the cleaning that it did give the pier. Therefore, if it is to be held, it must be for the breach of its implied obligation as wharfinger to supply a pier proper for the cargo. No other goods were damaged, and there is nothing to show that the representatives of the Hamburg-American Line knew that there were any green salted hides on board the Suriname, and none of them was present when the hides were being discharged on the night of April 2d-3d. They had nothing whatever to do with the discharge, which was entirely in the hands of Barber & Co., and, if they had been present, could have done nothing more than suggest the use of dunnage. Under these circumstances we do not think the Line was lacking in ordinary care and diligence.

The libel should have been dismissed as to it, and, so modified, the decree is affirmed, with interest, and costs of this court to the Hamburg-American Line against Barber & Co., Inc., with costs to Sulzberger & Sons Company against Barber & Co., Inc., and to the Toxaway Tanning Company against Barber & Co., Inc., and Sulzberger & Sons Company, to be paid primarily by Barber & Co., Inc.