### DALY v. NEW YORK DOCK CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

#### No. 30.

1. WHARVES ⬀20(3)—WHARFINGER—CARE.

While a dock company is not bound to provide enough water for any boat which may choose to come into the slip, it is bound to notify boats of any dangers or obstructions, the existence of which it knows, or ought to know, and which may be in the way of boats coming into the wharf.

2. WHARVES ⬀20(5)—INJURIES TO VESSELS—CONTRIBUTORY NEGLIGENCE.

Where wharfinger failed to notify master of barge of a sunken spile, which the barge struck while it was being hauled into the wharf to be berthed, the master was not negligent for failure to examine the bottom; it appearing that he was unfamiliar with the obstruction.

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. SHIPPING ⬦⬦12—SURVEY—NOTICE TO WHARFINGER.
　　Where a barge was injured while being berthed at a dock by reason of a sunken spile, of which the wharfinger should have warned, the wharfinger is entitled to notice of survey of the barge, and, notice not having been given, a decree against the wharfinger should be affirmed, with only half costs.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Bartle Daly against the New York Dock Company. From a decree for libelant, respondent appeals. Affirmed.

Davies, Auerbach & Cornell, of New York City (Charles E. Hotchkiss and Martin A. Schenck, both of New York City, and Henry C. Field, of Brooklyn, of counsel), for appellant.

Herbert Green, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The libelant's barge Harrison, loaded with a cargo of coal, was sent on January 13, 1917, to Pier 29, there to be discharged. The tug placed the barge in the slip between Pier 28 on the north and Pier 29 on the south (which slip is about 141 feet wide). She was damaged while the master was attempting to berth her at Pier 29 by running upon a sunken spile. At the time of the injury, she was being hauled to the bulkhead at the inner end of the slip, there to be discharged of her cargo. The captain was hauling her into place by a line he caused to be tied to the dock and pulling her in thereby.

The appellant contends there was deep waterway on the southerly side of the slip, which was available for passage, and that the captain took the shallower water on the northerly side of the slip, and was therefore at fault. It is not made to appear that the captain had knowledge that the water was shallower on the northerly side; and, furthermore, it does appear that this was the one way for him to proceed in order to reach her berth at the place intended for unloading. This free space, the witnesses agree, was at the bulkhead at the foot of Harrison street, and there was no other way open to him. Not only did the captain testify to this, but the appellant's witness Flower. The appellant controlled the whole bulkhead under a lease, and owned and controlled the whole of Pier 29, and collected wharfage for the use of the same. There was testimony that both light and loaded boats tied up "all along here" (indicating the entire bulkhead); and it was the custom for boats to berth at the coal dock, as well as at Pier 29, for which the dock company collected wharfage.

[1, 2] While the dock company was not bound to provide enough water for any boat which chose to come into the slip, it was bound to notify boats of any dangers of obstruction, the existence of which it knew or ought to have known, and which may be in the way of boats coming into its wharf. If the boat had berthed, and the master had selected the place where the damage occurred, without examining the bottom with a pike pole, as usual, he would have been at fault; but the damage occurred while he was hauling her into her berth. He

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was unfamiliar with any obstruction, was without knowledge thereof, and there was nothing to put him on guard to cause him to sound. What was discovered later as submerged spiles at the point where the captain says the damage occurred, and all the surrounding circumstances, are sufficient to justify the District Judge in finding, as he did, that the damage was due to a submerged spile. Under the circumstances, the appellant, as a wharfinger, was obliged to give notice to the public of conditions that render the slip dangerous in the exercise of ordinary care and diligence. Heissenbuttel v. Mayor, etc., of N. Y. (D. C.) 30 Fed. 456; Toxaway Tanning Co. v. Sulzberger & Sons Co. et al., 242 Fed. 888, 155 C. C. A. 476.

[3] It appeared at the argument that a survey of the damaged vessel was had, but no notice thereof was given to the dock company, nor did the appellant have the advantage of being represented. This is a grievous fault, and one which is now not infrequently occurring. We disapprove of such practices, and, because it has been indulged in by the libelant here, we shall affirm with half cost only.

Decree affirmed.