## THE EUREKA NO. 72.

## THE ADMIRAL DEWEY.

## BERWIND-WHITE COAL MINING CO. v. CITY OF NEW YORK et al.

District Court, S. D. New York.
April 21, 1941.

948

Macklin, Brown, Lenahan & Speer, and Paul Speer, all of New York City, for libellant.

William S. Chanler, and George S. Franklin, all of New York City, for City of New York.

Clive C. Handy, K. O. Mott-Smith and Gerald E. Dwyer, all of New York City, for New York Cent. R. Co.

E. C. Sherwood and F. J. Locker, both of New York City, for George W. Rogers Const. Corporation.

BONDY, District Judge.

March 3, 1939, about 4 P. M., during high tide, libellant's tug "Admiral Dewey" left libellant's loaded coal barge, "Eureka No. 72", moored to the north side of Pier No. 99, Hudson River, owned and controlled by the City of New York. About 10:30 P.M., during a falling tide, the "Eureka No. 72" settled on two submerged piles, damaging her bottom and causing her to sink on land under water adjacent to the north side of Pier No. 99. This land has been owned by the New York Central Railroad Company since 1897. About 1905 it erected a trestle approximately eighteen feet wide along the north side of Pier No. 99 to a point twenty feet from the river end of the pier. Upon direction of the City of New York that the trestle be removed, the rail-road company employed the G. W. Rogers Construction Corporation to demolish the trestle, removal of which was completed about February 7, 1939.

The libel was filed against the City of New York by the Berwind-White Coal Mining Company on the ground that the City of New York is liable as a general wharfinger who furnished an unsafe berth. The latter, asserting that it had never held out the north side of Pier No. 99 as a safe place at which to moor vessels and that the damage was not sustained through the negligence or fault on the part of the City or of anyone for whose acts it is responsible, impleaded the railroad company and the "Admiral Dewey", and contended that damage the barge may have sustained resulted from the fault or negligence of the railroad company and the "Admiral Dewey". The railroad company denied any negligence or fault on its part and impleaded the construction corporation, which had agreed to save the railroad company harmless as to any action brought against it by reason of any act or omission of the construction corporation.

For many years before the trestle was removed, libellant's barges and other vessels frequently were moored along its north side. Although there was a sign on the river end of the pier which read "No Berthing Allowed At This Pier", the City regularly collected wharfage from the owners of vessels moored along the south side of the pier, and notwithstanding that it did not own the land on the north side of the pier or trestle built thereon, it collected wharfage for mooring barges on the north side of the trestle on at least five occasions during 1937 and 1938 from the libellant. The City's conduct was so inconsistent with the sign that the sign lost its effectiveness as a warning not to use the pier. Despite that sign the City led masters of vessels reasonably to believe the south side of the pier and the north side of the trestle were safe berths. When the trestle was removed, there was no action taken by the City to indicate that the invitation which previously had included the north side of the trestle did not extend to the north side of the pier. Ostensibly the north side of the pier was as safe as the south side of the pier and the north side of the trestle. The City was therefore a general wharfinger holding out the north side of the pier as a safe place to berth. See Heissenbuttel v. City of New York, D.C., 30 F. 456.

The City made no inspection of the bottom along the north side of the pier after the trestle had been removed. It therefore failed in its duty as a general wharfinger to use reasonable diligence to ascertain the condition of the berth along that side and to remove or give due notice of dangerous obstructions. See Smith v. Burnett, 173 U.S. 430, 433, 438, 19 S.Ct. 442, 43 L.Ed. 756.

The City could not enter upon the land under water on the north side of the pier, and consequently could not sweep the bottom, without the permission of the railroad company. See Appleby v. City of New York, 271 U.S. 364, 46 S.Ct. 569, 70 L.Ed. 992. But it does not follow that the City was justified in leading matters of vessels reasonably to believe that the north side of the pier was a safe berth when it had not used due care in inspecting the berth. If the City was unable to inspect the bottom or make the bottom safe, the City should have taken steps reasonably calculated to warn vessels against mooring on the north side of the pier. The Cornell No. 20, D.C., 8 F.Supp. 431; O'Rourke v. Peck, C.C., 40 F. 907.

The railroad company was not under any duty to the City, as pier owner, to keep the north side of the pier open or the bottom free from obstructions. See Appleby v. City of New York, supra, 271 U.S. 364, 400, 401, 46 S.Ct. 569, 70 L.Ed. 992. The railroad company's agreement with the City obligated it to remove the trestle and to restore the land to the condition it had been in before the construction of the trestle. There was not, however, any evidence indicating the former condition of the land or establishing that any piles supporting the trestle had been left in the bottom. The City itself had stated that the removal of the trestle had been carried out to its satisfaction.

Nor did the railroad company, which was not a wharfinger, owe any duty to the libellant to make its property safe for mooring. The bargee was a person privileged to enter upon the waters in question, whom the railroad company had to warn only of hidden dangers known to it. See Restatement, Torts (1934) § 345; Mendelowitz v. Neisner, 258 N.Y. 181, 184, 179 N.E. 378. There was not any evidence that the railroad company knew of these piles. The construction corporation employed by the railroad company to remove the trestle did not discover any obstructions on the bottom after removing the trestle and sweeping the bottom.

The City did not delegate to the railroad company its duty to make the berth safe. The railroad company was merely under a contractual duty to remove the trestle and restore the land to its former condition and not under a duty to make the berth safe.

Neither the master of the "Admiral Dewey" nor the bargee made soundings or any attempt to find out what the condition of the bottom was. The berth was ostensibly safe; there was an implied invitation to use it. It is highly unlikely that soundings, if taken, would have disclosed the two submerged piles. Consequently there was no negligence on the part of the "Admiral Dewey" or the bargee which contributed to the accident. See Nassau Sand & Gravel Co., Inc., v. Red Star Towing & Transportation Co., 2 Cir., 62 F.2d 356.

The libellant is accordingly entitled to a decree against the City of New York, and the impleading petitions are dismissed.

Submit proposed decree, findings of fact and conclusions of law in accordance herewith.